CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, AND THE MAYOR AND COUNCIL OF HOBOKEN, LIKEWISE A MUNICIPAL CORPORATION, PROSECUTORS-RESPONDENTS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, DEFENDANT-APPELLANT.

Argued October 17, 1940—Decided June 26, 1941.

For the appellant Town of Westfield, cities of Elizabeth, Burlington, New Brunswick, Hackensack, towns of Kearny, Montclair, Township of Millburn in the County of Essex, and Borough of Somerville, *Herbert J. Hannoch.*

For the appellant City of Paterson, *John F. Evans.*

For the appellant City of Plainfield, *William Newcorn.*

For the appellant Town of Nutley, *William F. Gorman.*

For the appellant City of Summit, *Frederick C. Kentz.*

For the appellant City of Trenton, *Louis Josephson.*

Of counsel for the foregoing appellants, *Herbert J. Hannoch* and *Morris Weinstein.*

For the respondents, *Edward P. Stout.*

The opinion of the court was delivered by

Heher, J. Following the determination of this court in *Hoboken* v. *Martin,* 123 *N. J. L.* 442, chapters 2 and 3 of the laws of 1940 were adopted; and the primary subject of inquiry is the validity of the provisions for the apportionment of the excises levied and collected for the years 1938 and 1939 under chapters 7 and 8 of the laws of 1938. *Pamph. L.* 1940, *pp.* 13, 17; *Pamph. L.* 1938, *pp.* 17, 26.

These enactments embody a legislative finding that "the valuation data and methods employed and the valuations

determined and certified by the State Tax Commissioner in his attempted apportionment" of such revenues "for each of said years will result in a fair and equitable apportionment" thereof "among the municipalities entitled thereto under the provisions" of the 'cited act of 1938; and it is provided that the "valuations of the taxpayers' property located in, on or over any public street, highway, road or other public place in the several municipalities as determined and certified by the State Tax Commissioner, acting pursuant to sections five and fourteen" of chapter 7 of the laws of 1938, *supra,* for the years 1938 and 1939, "are hereby established and adopted as the units of measure and bases for a fair and equitable apportionment" of such revenues "to such municipalities for each of said years, respectively," and that such revenues "are hereby apportioned among the several municipalities in the proportion that the valuation, hereby established and adopted for said year, of such taxpayer's property located in, on or over any public street, highway, road or other public place in each municipality bears to the total valuations, hereby established and adopted for said year, of all such property of such taxpayer in this State."

The Supreme Court ruled that these statutes, as respects the distribution of the taxes, "reveal nothing approaching a legislatively fixed or pronounced standard for the measurement of value;" and that they "do not conform with the reasoning in *Hoboken* v. *Martin, supra,* or with the requirements of our constitution with respect to legislative enactments."

*First:* It is the general insistence of respondents that the acts "encroach upon the judicial and executive departments of the government," in contravention of section I of Article III of the State Constitution.

Specifically, it is said that the statutes "attempted to establish and adopt, by legislative 'fiat' valuations which this court" (in *Hoboken* v. *Martin, supra*) "said had been fixed and determined by the State Tax Commissioner under an unlawfully delegated authority;" and that the attempt was abortive as in violation of these "general rules of law:" (1) Where litigation has proceeded to a judgment on the merits, "it is beyond the power of legislation to alter or control;"

(2) the legislature is not invested with power "to annul, to set aside, or to reverse a judgment rendered by either a state or federal court;" and (3) "where the courts have enjoined the collection of, or decreed modifications in the assessment of, taxes, no subsequent statute can nullify such action." The authorities cited in support of these propositions are *United States* v. *Butler,* 297 *U. S.* 1; 56 *S. Cl.* 312; 80 *L. Ed.* 477; *John A. Gebelein, Inc.,* v. *Milbourne,* 12 *Fed. Supp.* 105; 16 *C. J. S.,* §§ 128, *et seq.;* 11 *Am. Jur.* 800, § 135. And there is invoked also the legal axiom that "curative acts cannot cure a want of authority to act at all"—citing *People* v. *Wemple, State Comptroller,* 117 *N. Y.* 77; 22 *N. E. Rep.* 761; 59 *C. J.* 1179.

It is maintained that these statutes are in essence "curative," but constitute "an attempted legislative recall of a judicial decision," and therefore a trespass upon the "judicial department of the government." The contention is also made that they "encroach upon the executive department," since it is not "constitutionally within the power of the legislature to determine the value of property, whether for the purpose of taxation or the apportionment of taxes, unless the actual value of necessity is fairly equivalent to that fixed by law—such as money on deposit in bank, or securities where the nominal or face value is substantially identical with the actual value." The insistence is that article IV, section VII, paragraph 12, of the State Constitution "implies the requirement of an administrative officer to make assessments, and applies equally to exemption from and apportionment of taxes, as well as to the imposition and levy of taxes." In sum, it is argued that the legislature "could have directed the State Tax Commissioner to establish and certify valuations *de novo,* provided a legislative standard or guide were furnished," but that it "had no constitutional power to dispense with the need of establishing valuations *de novo,* nor any power to itself establish the valuations."

These contentions are wholly untenable. As declared in *Hoboken* v. *Martin, supra,* the legislature "may apportion and distribute" these tax revenues "as it may see fit and determine." And, while it may entrust the effectuation of

its declared policy to an administrative agency, if the authority of the latter be confined by established standards of action, and thereby it performs its essential legislative function, it is elementary that the legislative power may in a given case be exerted directly, unless for practical reasons the intervention of a fact-finding instrumentality is essential to the consummation of the legislative object with due observance of constitutional precepts. *Jersey City* v. *Martin,* 126 *N. J. L.* 353. It may, if it chooses, adopt valuations or other factual findings made by a subordinate agency, and this without regard to whether such administrative action was in pursuance of a lawful grant of authority. Certainly, it was within the province of the legislative authority to adopt the valuations and formula established by the Tax Commissioner as designed to effect the distribution of these revenues in consonance with what it conceived to be considerations of fairness and equity. The fact that the commissioner acted without a valid grant of power does not put the results of his labors beyond adoption by the legislature, whose power in the premises is not limited by the constitution. Respondents proceed on the erroneous hypothesis that the legislature cannot do what it may delegate another to do in its behalf, even though direct action may be had without transcending constitutional limitations. There is no inhibition upon the legislature in the disposal of these moneys except that they be devoted to public uses and purposes. And the restraint imposed by article IV, section VII, paragraph 12, of the State Constitution does not extend to the exercise of this power. The challenged legislative action is not classable as the assessment of "property" for taxes, but rather the distribution of collected excise charges. *Vide Jersey City* v. *Martin, supra.* The law-making body is the sole judge of the fairness and wisdom of the distribution it directs. *State Board of Assessors* v. *Central Railroad Co.,* 48 *N. J. L.* 146, 277, 287, 334.

*Second:* The next point made by respondents is that the statutes "referred to 'valuation, data and methods employed' by the State Tax Commissioner;" that "this 'data' " and the "valuations determined and certified" are "wholly unidentified in the acts;" that "the term 'methods employed' is not

only loose, but, so far as the statute is concerned, it is utterly impossible to know what is meant;" that "there is nothing to show when the valuations were determined or certified, or to whom," and they "cannot be ascertained by anyone, without recourse to the State Tax Commissioner himself;" that it is not sufficient, as appellants maintain, that the commissioner's valuations are "ascertainable" as "matters of record" in his "office and in court," since they cannot "be identified from the acts themselves;" and so "there is a total disregard" of article IV, section VII, paragraph 4, of the State Constitution, "to say nothing of the fundamental requirement for certainty in legislation."

This contention is likewise groundless.

The cited constitutional provision interdicts the incorporation in a legislative enactment, by mere reference, of "any existing law, or any part thereof." This constitutes a limitation upon the exercise of the legislative power, and it is for that reason to be strictly construed. It concerns rights created and duties and burdens laid or imposed rather than their enforcement. If the reference is not to "affect or qualify the substance of the legislation or vary the terms of the act," but is "merely for the formal execution of the law," it is not within the prohibition. The design of the limitation was "the suppression of deceptive and fraudulent legislation, the purpose and meaning of which could not be discovered either by the legislature or the public without an examination of and a comparison with other statutes." The intention was not "to obstruct or embarrass legislation," but "to secure a fair and intelligent exercise of the lawmaking power." *Campbell* v. *Board of Pharmacy of New Jersey,* 45 *N. J. L.* 241; *affirmed,* 47 *Id.* 347; *Evernham* v. *Hulit,* 45 *Id.* 53; *Christie* v. *Bayonne,* 48 *Id.* 407. If the statute embody "a complete and perfect act of legislation in itself," it may provide for "ancillary proceedings to accomplish the purposes expressed in the act, by a reference to general laws on the subject, without violating this constitutional provision." *DeCamp* v. *Hibernia Railroad Co.,* 47 *Id.* 43. In construing a like constitutional mandate, the Court of Appeals of New York declared: "When a statute in itself and by its own language

grants some power, confers some right, imposes some duty, or creates some burden or obligation, it is not in conflict with this constitutional provision because it refers to some other existing statute, general or local, for the purpose of pointing out the procedure, or some administrative detail, necessary for the execution of the power, the enforcement of the right, the proper performance of the duty, or the discharge of the burden or obligation." *People* v. *Lorillard*, 135 *N. Y.* 285; 31 *N. E. Rep.* 1011. It is to be borne in mind that, save as modified by the constitution, such embodiment of a pre-existing act by specific reference is a permissible legislative procedure.

Here, the reference was not to the provisions of a statute, but rather to valuations of property made and certified by the Tax Commissioner for the years 1938 and 1939 as prescribed by the act of 1938, *supra*—facts established and so plainly identified as to render the legislative purpose definite, certain and enforceable. If the facts incorporated by reference are reasonably capable of ascertainment, they are as much a part of the statute as if set out at length therein. *Michaelson* v. *Wall Township*, 92 *N. J. L.* 72, 79. "The matter is one purely of identification." *Allison* v. *Corker*, 67 *Id.* 596. This case exemplifies and underlines the distinction. It was there held that an unconstitutional statute is importable into valid legislation by "appropriate reference." See, also, *Texas Co.* v. *Dickinson*, 79 *Id.* 292, which laid it down that the statute laws of a sister state are "facts merely," and their incorporation by reference is not within this constitutional limitation; *Allen* v. *Wyckoff*, 48 *Id.* 90, where by-laws of game protective societies were given the like category; and *Mortland* v. *Christian*, 52 *Id.* 521; *Balm* v. *Cape May*, 3 *N. J. Mis. R.* 58 and 172; *affirmed*, 101 *N. J. L.* 400; *Sawter* v. *Schoenthal*, 83 *Id.* 499.

The statutes under review do not adopt a mere mathematical formula theretofore devised by the Tax Commissioner. Though section 1 of each enactment, in outlining the legislative purpose, refers to "the valuation data and methods employed" by the Tax Commissioner, as well as "the valuations determined and certified by" him in his abortive appor-

tionment of the taxes, the subsequent enacting clauses estab-·
lished the "valuations of the taxpayers' property * * * as
determined and certified by" the commissioner "as the units
of measure and bases for a fair and equitable apportionment
of such taxes to" the municipalities, and allotted the taxes
"among the several municipalities in the proportion that the
valuation" thereby "established and adopted for said year, of
such taxpayer's property located in, on or over any public
street, highway, road or other public place in each munici-
pality bears to the total valuations" thereby "established and
adopted for said year, of all such property of such taxpayer
in this state." *Pamph. L.* 1940, *ch.* 2, §§ 3, 4; *ch.* 3, §§ 3,
*et seq.* Thus it is that the valuations basic in the statutory
scheme of distribution are fixed with reasonable certainty,
and the statutes themselves lay down the apportionment.

It has long been the settled practice for the lawmaking
body to legislate with respect to established ratables without
setting them out in the statute; indeed, the legislative func-
tion could not otherwise be practically exercised. *E. g., R. S.*
1937, 18:10-18, providing for the distribution of the state
school tax by a formula based upon the total ratables of the
state "as exhibited by the latest abstract of ratables filed in
the office of the State Comptroller;" *R. S.* 1937, 18:10-33,
directing the apportionment of railroad taxes in accordance
with the "latest abstract of ratables prepared by the State
Tax Commissioner and filed in the office of the comptroller;"
and *R. S.* 1937, 18:10-42, decreeing the division of state
school moneys among the several school districts of the indi-
vidual counties "on the basis of the total days' attendance of
all pupils enrolled in the public schools thereof as ascertained
from the last published report of the commissioner." *R. S.*
1937, 54:31-11, is in the same category.

*Third:* Lastly, it is maintained that "the object of the
statutes was to establish and adopt valuations previously deter-
mined and certified by the State Tax Commissioner," and that
it is not expressed in the titles as commanded by article IV,
section VII, paragraph 4, of the State Constitution.

This point is also lacking in substance. Each title outlines
the legislative object as the ratification and confirmation of

excise taxes levied for the years 1938 and 1939, and the making of provision "for the apportionment of such taxes among the municipalities and the payment thereof;" and this plainly satisfies the cited constitutional precept. It suffices if the "leading" or general subject of a statute is fairly expressed in the title. Where the subject of legislation is single, and is of a general character, all matters reasonably connected therewith, and appropriate to the achievement of the legislative object, may be embraced therein without infringing the constitutional interdict. Matters cognate to that object are not required to be expressly mentioned in the title. The general test of constitutional sufficiency in this behalf is whether the titular expression of the object of the statute is misleading; and such is palpably not the case here. *Vide Jersey City* v. *Martin, supra.*

The judgments are accordingly reversed.

*For affirmance*—None.

. *For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, HAGUE, JJ. 11.