147 N.J. Super. 557 (1977)
371 A.2d 776
THE TOWNSHIP OF PRINCETON, IN THE COUNTY OF MERCER, STATE OF NEW JERSEY, A MUNICIPAL CORPORATION, APPELLANT,
v.
DAVID J. BARDIN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, OF THE STATE OF NEW JERSEY, AND THE INSTITUTE FOR ADVANCED STUDY  LOUIS BAMBERGER AND MRS. FELIX FULD FOUNDATION, RESPONDENTS. THE TOWNSHIP OF PRINCETON, IN THE COUNTY OF MERCER, STATE OF NEW JERSEY, A MUNICIPAL CORPORATION, APPELLANT,
v.
DAVID J. BARDIN, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, OF THE STATE OF NEW JERSEY, AND RECTOR, WARDENS AND VESTRYMEN OF THE ALL SAINTS CHURCH, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1976.
Decided February 22, 1977.
*561 Before Judges CARTON, KOLE and LARNER.
Mr. Allen D. Porter argued the cause for appellant Township of Princeton (Messrs. Miller & Porter, attorneys).
Mr. John M. VanDalen, Deputy Attorney General, argued the cause for respondent, David J. Bardin, Commissioner, Department of Environmental Protection (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Coleman T. Brennan argued the cause for respondent, Institute for Advanced Study  Louis Bamberger and Mrs. Felix Fuld Foundation (Messrs. Cahill, McCarthy and Hicks, attorneys).
Messrs. Smith, Stratton, Wise & Heher, attorneys for respondent All Saints Church, did not appear at oral argument but filed statement in lieu of brief relying on brief of respondent Institute for Advanced Study.
The opinion of the court was delivered by CARTON, P.J.A.D.
On this appeal the Township of Princeton challenges the validity of real estate tax exemptions *562 granted by respondent David J. Bardin, Commissioner of the Department of Environmental Protection, to respondents Institute for Advanced Study and All Saints Church pursuant to N.J.S.A. 54:4-3.63 to 3.71. The Institute for Advanced Study is a New Jersey nonprofit corporation organized under N.J.S.A. 15:1-1 et seq. Its certificate of incorporation states that the purposes for which it is formed are, among other things, "the promotion of knowledge in all fields, and * * * the training of advanced students and workers for and beyond the degree of Doctor of Philosophy and other professional degrees of equal standing." All Saints Church is a New Jersey religious corporation organized under N.J.S.A. 16:12-1 et seq.
The facts are undisputed. The Institute and the Church filed separate applications for a "Green Acre" property tax exemption with the Commissioner. The Institute's application covered 293 acres of land in Block 12 on the township tax map, while that of the church pertained to an unspecified amount of acreage designated as Lot 592, Block 33 on the township tax map. The Commissioner conducted a joint hearing at which the township appeared. After the hearing the Commissioner, pursuant to N.J.S.A. 54:4-3.67, certified as tax exempt the Institute's 293 acres, with the exception of approximately 10 acres and certain improvements made by the Institute, as well as all of the Church's property. We consolidated the appeals by the Township from these actions.
The township mounts a five-pronged attack upon the constitutionality of the act under the New Jersey Constitution. Its first argument is that the act's classification of certain properties as exempt from property taxes constitutes a special law granting a tax exemption and consequently violates the prohibition against such laws in the New Jersey Constitution. N.J. Const., Art. VIII, § 1, par. 2.[1] Essentially, the township *563 contends that the act is not a general law because it limits the statutory tax exemption to those landowners who are "nonprofit corporation[s] or organization[s] organized under the laws of this or any State of the United States authorized to carry out the purposes [identified in the act] and which [are] qualified for exemption from Federal Income Tax under section 501(c)(3) of the Internal Revenue Code * * *." N.J.S.A. 54:4-3.64.
The township's thesis is that limitation of the exemption to landowners who are (1) organized as nonprofit organizations or corporations, (2) authorized to carry out the conservation and recreational purposes specified in the act, see N.J.S.A. 54:4-3.63, and (3) who qualify for exemption from federal income tax under § 501(c)(3), creates an unlawful classification based upon the status of the owner. See Tippett v. McGrath, 70 N.J.L. 110, 113 (Sup. Ct. 1903), aff'd 71 N.J.L. 338 (E. & A. 1904); N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 44-45 (1954).
This contention has no merit. To be general, a tax exemption statute must draw classifications which rest upon "substantial distinctions" that have a "logical and reasonable basis," and include all property falling within the named classification. General Electric Co. v. Passaic, 28 N.J. 499, 508 (1958), app. dism. 359 U.S. 1006, 79 S.Ct. 1146, 3 L.Ed.2d 987 (1959); Schwartz v. Essex Cty. Bd. of Taxation, 129 N.J.L. 129, 133-34 (Sup. Ct. 1942), aff'd 130 N.J.L. 177 (E. & A. 1943). But see, Switz v. Kingsley, 37 N.J. 566, 583-85 (1962). A legislative enactment is a special law "if the law does not `affect equally all of a group who, bearing in mind the purposes of the legislation, are *564 distinguished by characteristics sufficiently marked and important to make them a class by themselves' * * *. Legislation can be unconstitutionally special even where it affects groups [of subjects] if its classification of them has no rational relationship to its object." Meadowlands Regional Redevelop. Agency v. State, 63 N.J. 35, 48 (1963) (Conford, P.J.A.D. t/a, dissenting in part).
The limitation of the instant classification was intended by the Legislature to insure that the tax exemption is not granted to individuals and corporations who would use the exemption for strictly private purposes and economic gain or who engage in activities not permitted by the federal statute. Such an objective clearly fulfills the "logical and reasonable basis" aspect of the General Electric standard.
There is a "substantial distinction" between organizations and corporations which are required by their state charters, and hence by state law, to operate in a nonprofit manner and which are authorized by their charters to engage in and do engage in the conservation activities contemplated by the act, and those individuals, organizations and corporations who are not so limited and authorized or who do not so use their lands. In classifying the property eligible for the exemption, the legislative purpose was to differentiate between organizations such as those involved in this case and profit-oriented and other organizations which do not qualify under the federal statute. We are satisfied that this legislative classification does not reflect an arbitrary or insubstantial differentiation.
The township's reliance upon Tippett v. McGrath, supra, and N.J. Turnpike Auth. v. Washington Tp., supra, is misplaced. In those cases the sole basis for the arbitrary statutory classification was the status of the property owner, while here the private, nonprofit status of the landowner is one of the bases for the statutory classification. The act also classifies eligible property according to its actual and exclusive use for "natural open space areas for public recreation *565 and conservation or recreational purposes." N.J.S.A. 54:4-3.63.
It is true that the "owner" limitation "separates some [property] from other [property] upon which, but for such limitation, [the act] would operate * * *." Budd v. Hancock, 66 N.J.L. 133, 135 (Sup. Ct. 1901). But such separation would become special in a constitutional sense only if it can be said to be "arbitrary" as defined by the General Electric, supra, test. As we have already indicated, the "owner and use" limitation does not create an arbitrary classification offensive to Art. VIII, § 1, par. 2.
The second prong of the township's constitutional assault is directed at the "roll-back" provision, N.J.S.A. 54: 4-3.69.[2] The township argues that this provision violates the constitutional directive that all taxes be imposed by general laws and uniform rules. N.J. Const., Art. VIII, § 1, par. 1(a).[3] The township reasons that the roll-back provision grants, in effect, a partial exemption or a "full exemption subject to partial recoupment."
*566 This argument is specious. It is well settled that Art. VIII, § 1, par. 1 was intended to forbid preferential treatment in real property taxation by requiring that all property within a taxing district be assessed according to a uniform standard of value. Switz v. Kingsley, 37 N.J. 566 (1962). There is no allegation here that the lands involved are being assessed pursuant to a standard of value different from that applied to other township lands. For the purposes of imposition of a roll-back assessment under the act, the standard of valuation employed is that uniform standard applied to all other lands in the township.
The fact that the Legislature attempted through the roll-back provision to recoup previously exempted tax assessments only for the tax year in which the change in the use of the property occurs, and the two immediately preceding tax years, raises no question of constitutional dimension. The township does not suggest, and we find no authority indicating, that a roll-back provision is proscribed by Art. VIII, § 1, par. 1(a). So long as the standard of tax valuation from which eligible land becomes exempt under § 2 of the act, and to which that land becomes subject under the roll-back provision of the act, is the usual standard of valuation for that taxing district in that tax year, the constitutional provision is satisfied. Hence, we see no constitutional infirmity in the Legislature's decision to limit recoupment under the act to the taxes which would have been paid in the year of change of use, and the two preceding years had not the exemption been granted.
The decisions interpreting the Farmlands Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., relied upon by the township, are inapposite. Under the terms of that, the eligible farmlands are assessed at a lower standard of tax valuation than that applied to other lands within the taxing district. While the amount of property tax due on lands assessed under the Farmlands Assessment Act is quite low, some property taxes must nevertheless be paid upon eligible farmlands. As a result of the use of a lower, nonuniform standard *567 of valuation in the Farmlands Act, a constitutional amendment was enacted to cure what otherwise was a fatal constitutional defect in that act. See Terhune v. Franklin Tp., 107 N.J. Super. 218, 220-21 (App. Div. 1969); East Orange v. Livingston Tp., 102 N.J. Super. 512, 532-34 (Law Div. 1968), aff'd o.b. 54 N.J. 96 (1969). See also, Switz v. Kingsley, supra.
Under the Green Acres Act, however, qualified land is completely exempted from property taxation. The act does not affect the standard of tax valuation by which eligible and ineligible lands are assessed, and hence poses no constitutional issues under Art. VIII, § 1, par. 1.
The township's third argument against the constitutionality of the Act focuses upon the legislative definition of tax exemption eligibility. According to the township, the legislative definition of an eligible, nonprofit corporate landowner in terms of the landowner's eligibility for exemption from federal income taxation under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C.A. § 501(c)(3),[4] violates N.J. Const. (1947), Art. IV, § 7, par. 5's[5] prohibition against the enactment of laws which incorporate the provision of other laws without inserting the incorporated language into the legislation.
*568 The purpose of this provision in the State Constitution is for the "suppression of deceptive and fraudulent legislation, the purpose and meaning of which [can] not be discovered either by the legislature or the public without an examination of and a comparison with other statutes." Jersey City v. Martin, 127 N.J.L. 18, 23 (E. & A. 1940); Campbell v. N.J. Pharmacy Bd., 45 N.J.L. 241, 245 (Sup. Ct. 1883), aff'd o.b. 47 N.J.L. 347 (E. & A. 1885) (both discussing the predecessors to the current provision). Accord, Eggers v. Kenny, 15 N.J. 107, 124 (1954); Bucino v. Malone, 12 N.J. 330, 349 (1953). The provision is not meant to "obstruct or embarrass legislation," but rather "to secure a fair and intelligent exercise of the law-making power." Jersey City v. Martin, supra, 127 N.J.L. at 23; Campbell v. N.J. Pharmacy Bd., supra, 45 N.J.L. at 245. Because it limits legislative power, the courts have strictly construed the section. Jersey City v. Martin, supra, and cases cited therein.
Arguably, the statutory reference to § 501(c) (3) may be viewed as a mere "administrative detail," or as the adoption of a "method of procedure necessary to effectuate [the statutory] purposes" beyond the sweep of the constitutional prohibition. See Port of N.Y. Auth. v. Heming, 34 N.J. 144, 153, app. dism. 367 U.S. 487, 81 S.Ct. 1676, 6 L.Ed.2d 1241 (1961); Jersey City v. Martin, supra, 127 N.J.L. at 24. However, we incline to the view that this portion of the statutory definition is so crucial to the substantive structure of the legislation that it cannot be said to realistically comport with the basic concept established in the "administrative detail" exception.
But our conclusion that the § 501(c)(3) aspect of the statutory definition is something more than an administrative detail does not mean that the omission of § 501(c) (3) language from the act renders it invalid under Art. IV, § 7, par. 5. Our courts have suggested that the Legislature may refer in legislation to enactments of other states, and federal statutes and regulatory material, without including *569 the actual language to which reference is made. Jersey City v. Martin, supra, 127 N.J.L. at 24; Texas Co. v. Dickinson, 79 N.J.L. 292, 297 (Sup. Ct. 1910); State v. Hotel Bar Foods, 18 N.J. 115, 125 (1955). These cases indicate that the prohibition in Art. IV, § 7, par. 5 extends only to other enactments of the New Jersey Legislature. On this basis the Legislature's reference to § 501 (c) (3) may be said to comply with both the letter and the spirit of the constitutional requirement, despite the failure of the Constitution to differentiate between prior state statutes and federal legislation and to exempt the latter from the coverage of the constitutional prohibition by express language to that effect.
We do not, however, rest our rejection of the township's Art. IV, § 7, par. 5 challenge to the act solely upon the Jersey City rationale, for we think that the Legislature's purpose in referring to § 501(c) (3) is entirely congruent with the policies that the drafters of Art. IV, § 7, par. 5 sought to promote. Far from constituting deceptive or fraudulent legislative action, the reference to § 501 bespeaks an efficient and practical method of defining the kinds of nonprofit organizations contemplated by the Legislature for eligibility under the act.
The federal statute, and the attendant regulations promulgated by the Internal Revenue Service, are readily accessible to those organizations which would be interested in seeking the Green Acres exemption. Certainly, such applicant organizations have become familiar with § 501(c)(3) in their annual dealings with the Internal Revenue Service. It would, as a practical matter, be far less confusing to such applicant organizations to know that the term "nonprofit organization" means the same thing for the purposes of both the federal income tax statute and our Green Acres Act. Less statutory confusion was one of the goals of the drafters of Art. IV, § 7, par. 5, and we think that the Legislature's decision to use by reference the § 501(c)(3) *570 definition represents a pragmatic attempt to promote that objective. Thus, we conclude that the purposes and concerns of Art. IV, § 7, par. 5 are well served by the § 501 (c) (3) reference. Accord, City Nat'l Bank of Clinton v. Iowa State Tax Com'r, 251 Iowa 603, 102 N.W.2d 381 (Sup. Ct. 1960).
The township's next constitutional challenge to the act is that the State Legislature, in referring to § 501(c)(3), has, in effect, delegated to the United States Congress its power to create the appropriate statutory definition, in violation of N.J. Const. (1947), Art. IV, § 1, par. 1.[6]
We conclude that the Legislature has not in the statute here challenged even arguably delegated its law-making powers to either the Commissioner or to Congress. The Legislature has spoken clearly in the act in favor of including within the State's definition of nonprofit organization the federal income taxation definition under § 501(c) (3). The only delegation is to the Commissioner, who is given "power to determine some fact or state of things upon which the [Green Acres Act] makes or intends to make its own action depend." Bor. of Little Ferry v. Bergen Cty. Sewer Auth., 9 N.J. 536, 543 (1952), cert. den. 344 U.S. 865, 73 S.Ct. 105, 97 L.Ed. 670 (1952). In this case he must determine whether the applicant organization has, in fact, qualified for § 501(c) (3) status and whether the applicant has fulfilled the other statutory qualifications for the exemption. N.J.S.A. 54:4-3.64.
The Commissioner has the discretion under the act to refuse a Green Acres tax exemption to an applicant organization which is qualified for § 501(c) (3) status. While the Legislature intended that all applicants for the State's *571 tax exemption have federal § 501(c)(3) status, it also contemplated that all such applicants might not meet the other qualifications imposed by the act. Thus, the Legislature has not, as the township argues, reduced the statutory standard of Green Acres eligibility to a kind of § 501(c)(3) litmus test, and nothing more. We find no unconstitutional delegation to the Commissioner in this arrangement.
The township argues further, however, that including any reference to the federal statute in the act means that Congress determines the scope of eligibility for the Green Acres exemption every time it amends § 501(c) (3). We note that under § 8 of the Act, N.J.S.A. 54:4-3.70, the Commissioner has the power to promulgate rules which would preserve the § 501(c)(3) part of the Green Acres definition of eligible organizations as it was at the time the Act was enacted in 1974 should Congress choose to amend the federal statute at some subsequent time. With the § 501(c)(3) definition thus frozen, the Legislature would have the opportunity to consider the applicability of the changes made by Congress in the federal statute to the Green Acres Act and its purposes.
Moreover, even if the Commissioner failed to "freeze" the § 501(c)(3) definition after an amendment by Congress, the Legislature is always free to amend the act to reflect its desire to maintain the previous language of § 501(c)(3) for Green Acres purposes. Thus, we conclude that the Legislature has not delegated to the Congress its constitutional power to make laws.
The township's final constitutional attack upon the act focuses upon its title. According to the township, the title of the Act is misleading because it describes the act as applying to "real property owned by certain nonprofit corporations" when, in fact, the act authorizes grants of exemptions to organizations which are not corporations. The Township argues that this inconsistency violates N.J. Const. (1947), *572 Art. IV, § 7, par. 4,[7] and hence renders the act unconstitutional.
It is firmly settled that this provision of the Constitution was intended to prevent fraud upon the public and the Legislature through the use of misleading titles in legislative enactments, and that the provision is satisfied "when the title gives notice to the Legislature and to the public of the general purpose of the Act * * *." Painter v. Painter, 65 N.J. 196, 206 (1974); State v. Guida, 119 N.J.L. 464, 465 (E. & A. 1938). The Constitution contemplates that the title of the act accurately label, rather than extensively index, the contents of the statute, Painter v. Painter, supra, 65 N.J. at 206; Robson v. Rodriquez, 26 N.J. 517, 527 (1958). See General Public Loan Corp. v. Director, Div. of Taxation, 13 N.J. 393, 403-04 (1953). We are satisfied that the title of the Green Acres Act does not offend this constitutional provision.
The township also challenges the correctness of the Commissioner's regulatory definition of the organizations eligible for the statutory exemption. It argues that the regulation disregards the statutory requirement that the applicant organization be a "conservation organization," and therefore exceeds the scope of the statutory definition.
The regulation, N.J.A.C. 7:35-1.3,[8] purports to grant Green Acres tax exempt status to any nonprofit organization which owns "natural open space land" in the State of New Jersey and qualifies for § 501 (c) (3) treatment. To the extent that the regulation mechanically grants the *573 exemption to those land-owning, nonprofit organizations which enjoy § 501(c) (3) status without inquiry into the purposes in which the applicant is authorized by its charter to engage, and the use to which the land is actually put, we agree with the township that the regulation exceeds the scope of the act.
As we have already stated, we read the act as requiring an eligible applicant to qualify under Section 501(c) (3), to be "authorized to carry out the purposes on account of which the exemption is claimed," namely, "conservation and recreation purposes," N.J.S.A. 54:4-3.64, and to actually and exclusively devote its land to such purposes for the public's benefit. The township correctly points out that many nonprofit organizations which qualify for § 501 (c) (3) treatment may be prohibited from engaging in conservation and recreational purposes, or may not actually devote their lands to the contemplated uses even if so authorized. Consequently, such applicants would not fall within the Act's definition of eligible organization. We hold that the failure of the regulation to incorporate these latter statutory tests of eligibility for the act's tax exemption renders the regulation invalid to the extent of its deviation from the statute.
However, we do not agree with the township's assertion that only organizations exclusively authorized to carry out conservation purposes qualify for the exemption. The statute contains no language restricting statutory eligibility to such organizations. The statute, by its terms, grants the exemption to any nonprofit organization or corporation authorized to dedicate its privately-owned lands for public conservation and recreational purposes, regardless of the primary activity of that organization or corporation. We are not persuaded that such a restriction on eligibility can be ascribed to the act from the statement in its initial section that "public funds for the acquisition and maintenance of public open space should be supplemented by private individuals and conservation organizations * * *." N.J.S.A. 54:4-3.63 (emphasis added). We conclude that the entire act, particularly *574 § 2 which defines eligible organizations, reflects the Legislature's judgment that all private, nonprofit organizations owning open land should be encouraged, through the grant of the tax exemption, to dedicate their land to public conservation and recreational purposes. We think that this purpose is adequately served by requiring the applicant organization to demonstrate that it is authorized, either expressly or impliedly, to dedicate its land for the public conservation and recreational purposes contemplated by the act.
The charters of the Church and the Institute do not expressly authorize them to dedicate their land for public conservation and recreational uses. On the other hand, these powers are not expressly prohibited by either organization's charter. The scope of a corporation's implied powers is relatively broad. "[W]hatever may be fairly deemed an incident of the power expressly conferred by the [corporate] charter is within the grant unless expressly prohibited. The instrument is to receive a reasonable construction to serve the general end in view." Leeds v. Harrison, 9 N.J. 202, 211-12 (1952). This rule applies to nonprofit as well as business corporations. Leeds v. Harrison, supra, 9 N.J. at 212.
Our review of the charters of both the Church and the Institute satisfies us that the dedication of land to public conservation and recreational purposes is well within the implied powers of each organization. Therefore, we uphold the Commissioner's grant of Green Acres tax exemptions to both the Church and the Institute, despite the deviation of the Commissioner's regulation from the statutory definition.
Affirmed.
NOTES
[1] Article VIII, § 1, par. 2 provides:

Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more such purposes and not operating for profit.
[2] N.J.S.A. 54:4-3.69 provides:

When real property which is exempted under the provisions of this act is applied to a use other than for conservation or recreation purposes, it shall be subject to taxes, hereinafter referred to as roll-back taxes, in an amount equal to the taxes which would have been payable on such property had it not been exempt, in the current tax year (the year of sale or change in use) and in each of the 2 tax years immediately preceding in which the real property was exempt, with interest compounded at 8% annually; provided, however, that no such roll-back taxes shall be payable when the property is sold, leased, donated or otherwise conveyed to a public agency, nonprofit corporation or organization.
[3] Art. VIII, § 1, par. 1 (a) provides:

Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, * * * and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated * * *.
[4] 26 U.S.C.A. § 501(c) (3) provides:

Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.
[5] Art. IV, § 7, par. 5 provides:

* * * No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act.
[6] Art. IV, § 1, par. 1 provides:

The legislative power shall be vested in a Senate and General Assembly.
[7] Art. IV, § 7, par. 4 provides:

To avoid improper influences which may result from intermixing one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title. * * *
[8] N.J.A.C. 7:35-1.3 provides:

Any nonprofit organization who qualifies for exemption from Federal income tax under Section 501(c) (3) of the Internal Revenue Code and owns natural open space land in the State of New Jersey is eligible to make application under this program.