Charles Marks, J.
This is an article 78 CPLR proceeding to review and annul a determination of the Landmarks Preservation Commission of the City of New York designating the Leonard Jerome House at 32 East 26th Street, Manhattan, as a landmark. The designation was made pursuant to chapter 8-A of the New York City Charter (Local Laws, No. 46 of City of New York), the declared purposes of which are, inter alia: “ to (a) effect and accomplish the protection, enhancement and perpetuation of such improvements and of districts which represent or reflect elements of the city’s cultural, social, economic, political and architectural history ’ ’.
Petitioner, Manhattan Club, owner of the building which once was owned and occupied by Jennie Jerome, mother of the late Winston Churchill, contends that the designation constitutes a deprivation of property without due process of law in violation of the Federal and State Constitutions; a taking of private property without just compensation, and an impairment of a pre-existing contract to sell the property. In addition, it asserts that the determination was arbitrary and capricious in that the premises have no real historical interest.
Respondent’s position is that there is no taking of property without due process, since the only effect of the law is to prohibit *558 alteration, reconstruction or demolition of the exterior architectural features of the building without prior approval of the commission, the owner being at liberty to do as it pleases with the interior. It also argues that the petition is insufficient to raise the issue of an unconstitutional impairment of petitioner’s contract to sell, since there has been no allegation that it has lost, or will lose, its contract as the result of the designation and that, in any event, any such impairment would be a valid exercise of the public power to promote the general welfare. It also states that there is substantial evidence of the significant architectural and historical value of the property.
The structure, erected in 1859, is described by the commission as ‘ ‘ a distinguished and attractive example of the French Second Empire Style of architecture. ’ ’ It was built for Leonard Jeróme, Jennie Jerome’s father, and occupied by his famous daughter for a number of years. It has been owned or occupied by the Manhattan Club since prior to 1900.
On April 22, 1965 the club contracted to sell the building for $600,000, $50,000 of which was paid on the signing of the contract and an additional $250,000 on June 21, 1965. Title was to pass on April 15, 1966. According to petitioner, the club has been losing members and operating at an annual loss of from $10,772.64 to $20,428.02, and there is no reasonable prospect of redressing the loss. The purchaser proposes to raze the building and erect a 33-floor office building on the site.
On September 2,1965, petitioner was first notified of a hearing to be held, respecting the proposed designation, on September 21, 1965. Both petitioner and its vendee appeared at the hearing and voiced their opposition. Petitioner also submitted written objections to the proposed designation, which was formally made on November 23, 1965, after the commission had discussed the matter at two intervening meetings.
Authority for the designation of landmarks is contained in subdivision 25-a of section 20 of the General City Law which empowers the city “ Subject to the constitution and general laws of this state * * * To provide, for places, buildings, structures, works of art, and other objects having a special character or special historical or aesthetic interest or value, special conditions or regulations for their protection, enhancement, perpetuation or use ”.
Pursuant to this authority, the City Council enacted chapter 8-A (Local Law No. 46 of 1965) which established the Landmarks Preservation Commission. Under that law, if the owner of the building wishes to alter, construct or demolish an architectural feature of the landmark, it must receive authorization from the *559 commission to do so. Where the building is incapable of earning a reasonable return and the commission is unable to devise a satisfactory scheme for its preservation, provisions are made for condemnation, purchase or permission to demolish.
There is no merit to petitioner’s contention that the determination is unsupported by substantial evidence. A hearing was held and the issues thoroughly aired. The architectural, historical and aesthetic value of the improvement was fully established, and the court may not substitute its judgment for that of the administrative agency (Matter of Kilgus v. Board of Estimate of City of N. Y., 308 N. Y. 620; Matter of Wiener v. Gabel, 18 A D 2d 1025 [2d Dept., 1963]). Such values are a “ valid subject of legislative concern ” and “ reasonable legislation designed to promote that end is a valid and permissible exercise of the police power” (People v. Stover, 12 N Y 2d 462, 467 [1963]).
Indeed, the highest approbation has been given to recognition of such values. In Berman v. Parker (348 U. S. 26, 33 [1954]) the United States Supreme Court stated: ‘The concept of the public welfare is broad and inclusive * * * The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled * * * If those who govern the District of Columbia decide that the Nation’s Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way.”
Petitioner’s contention that the designation has impaired rights vested in the existing contract of sale is not supported in the record. There is no showing that its vendee has refused, or will refuse, to take under the contract or that it has suffered or is about to suffer any loss under the contract because of the designation.
Moreover, all contracts are subject to the police power of the State and * ‘ when emergency arises and the public welfare requires modification of private contractual obligations in the public interest, the question is not Avhether ‘ legislative action affects contracts incidentally, or directly or indirectly, but AAfhether the legislation is addressed to a legitimate end and the measures taken are reasonable or appropriate to that end ’ ” (Twentieth Century Assoc. v. Waldman, 294 N. Y. 571, 580 [1945], citing Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 438; Matter of People [Tit. & Mtge. Guar. Co.], 264 N. Y. 69, 83; East New York Sav. Bank v. Halm, 293 N. Y. 622).
*560 And as has been shown (supra) the promotion of the general welfare includes the historical and cultural purpose envisaged by the city law.
Finally, at least as it applies to petitioner, the statute is not confiscatory. Petitioner is free to do as it pleases with the interior of the building. It is guaranteed a reasonable return on its investment. And if no plan can be devised to materialize this guarantee, it may make such changes as it wishes.
As the court pointed out in Matter of Setauket Development Corp. v. Rorneo (18 A D 2d 825, 826 [2d Dept., 1963]): “ It is not sufficient, in order to render a zoning ordinance confiscatory and unconstitutional, that permitted uses result in lower profits, no profits, or actual loss. What must be established is that the ordinance precludes use of property ‘ for any purpose for which it is reasonably adapted ’ (Levitt v. Incorporated Vil. of Sands Point, 6 NY2d 269, 273) ”.
Accordingly, the application is denied and the petition is dismissed.