592 A.2d 216

TOWN OF MORRISTOWN, PLAINTIFF–APPELLANT, v. WOMAN'S CLUB OF MORRISTOWN AND ATTORNEY GENERAL
OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Argued February 26, 1991—Decided July 15, 1991.

*Thomas Olson* argued the cause for appellant (*McKirdy and Riskin,* attorneys; *Thomas Olson* and *Brian M. Hak,* on the briefs).

*Clifford W. Starrett* argued the cause for respondent Woman's Club of Morristown (*Schenck, Price, Smith & King,* attorneys; *Sheilah O'Halloran,* on the brief).

*Mary R. Hamill,* Deputy Attorney General, argued the cause for respondent Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns a statutory exemption from New Jersey real-estate taxes by New Jersey for buildings owned by non-profit corporations and officially certified as historic sites. *N.J.S.A.* 54:4–3.52. Plaintiff, Town of Morristown, urges that the statute on its face violates the requirement under the tax article of the New Jersey constitution that "property shall be assessed for taxation under general laws and by uniform rules." *N.J.Const.* art. VIII, § 1, para. 1(a). More specifically, it urges that the Dr. Condit House, a certified historic site owned by defendant Woman's Club of Morristown, is not exempt from taxes under *N.J.S.A.* 54:4–3.52.

I

Woman's Club, a nonprofit corporation, was organized in 1931 for the "promotion of higher social and moral conditions and to study civic, social and cultural subjects." Among its members' charitable nonprofit activities are conducting social services for hospitalized patients and persons in nursing homes,

raising and awarding of scholarship funds, serving as hospital and church volunteers, and organizing holiday drives to collect and distribute food and toys for needy families. Since 1939, Woman's Club has held tax-exempt status under what is now section 501(c)(3) of the Internal Revenue Code, on the basis that "the sponsorship of civic activities are the predominant purpose of the organization." As a 501(c)(3) organization, none of Woman's Club's income "is credited to surplus or inures to the benefit of any private individual."

In 1971, the Commissioner of the Department of Environmental Protection (DEP) certified the Dr. Condit House as a State Historic Site. The Commissioner described the site as a "fine example of New Jersey's historic heritage." He awarded the Certificate of Historic Site in recognition of "the historic value of this site to the history and government of ... New Jersey and to transmit the same unimpaired to succeeding generations." At the time the site first received local tax exemption in 1972, Woman's Club had leased part of the building for commercial purposes. That year, despite the certification, Morristown issued a standard tax assessment of the property. Following an appeal by Woman's Club, the Morris County Board of Taxation (Tax Board) reduced the assessment to zero. Since 1972, the Dr. Condit House has remained tax exempt under *N.J.S.A.* 54:4–3.52 as a historic site. In 1987, Morristown again challenged the grant of the tax exemption for the property.

The Dr. Condit House contains three stories and a basement. At the time of the 1987 contested assessment, Woman's Club members and local church groups held *pro bono* activities such as fund-raising lunches for charities in the building, and local senior citizens used the auditorium for their lunches. In addition, to provide financial support for its nonprofit programs and its maintenance and preservation of the property, the Woman's Club leased a portion of the building to various commercial tenants. The basement of the older portion of the building was unfinished except for a small office area leased by a real-estate broker; Woman's Club used the remainder of the basement as

a storage area. The real-estate broker also occupied approximately one-half of the first floor area. Woman's Club used the other part of the first floor as an office, a library, a sitting area, and a kitchen. The auditorium provided space for certain Woman's Club functions but was also used by a tenant for a dance and performing-arts studio. That tenant also occupied the basement area located below the stage. Woman's Club leased the second and third floors for private business use as physicians', attorneys' and business offices. In 1989, Woman's Club received approximately $60,000 in rent from its commercial clients. The parties have stipulated that projected operating expenses for 1987–88 totalled roughly $41,600.

Morristown challenged the property's exemption for the 1987 tax year. The Tax Board affirmed the original assessment following Morristown's appeal. Morristown then filed a complaint against the Woman's Club in the Tax Court, arguing that the statute was unconstitutional because it links property-tax exemptions to the owner's status and not the property's use, or, alternatively, that a historical-use requirement should form part of the statutory interpretation. It argued, therefore, that the property did not qualify for an exemption and should be subject to an assessment for 1987 pursuant to *N.J.S.A.* 54:4-27. Because the complaint challenged the statute's constitutionality, the court permitted the Attorney General to intervene as a party-defendant.

In upholding the constitutionality of *N.J.S.A.* 54:4-3.52, the Tax Court found a legislative intent that "an historic site owned by a nonprofit corporation must have a public purpose use." *Town of Morristown v. Woman's Club*, 10 *N.J.Tax* 309, 321 (1989). The court determined that without such a use requirement, the legislation would violate the constitutional requirement that exemptions be granted by general laws. *Id.* at 319. The court then concluded that the use of the Dr. Condit House for commercial purposes did not accord with that public-purpose-use requirement; therefore the property was not exempt from taxation. *Id.* at 321.

The Appellate Division, 242 *N.J.Super.* 654, 577 *A.*2d 1309, reversed. Although it agreed that tax exemption statutes based solely on a property owner's status would violate the constitution, the court found that a statutory exemption premised on the public purpose and works of a nonprofit corporation was a sufficiently substantial, reasonable, and logical categorization to satisfy constitutional requirements without grafting on a public use requirement as the Tax Court had done. In so deciding, the court identified the issue as "whether *N.J.S.A.* 54:4–3.52 is constitutional, not whether it would be more faithful to constitutional principles by the addition of a use requirement."

We granted certification. 122 *N.J.* 392, 585 *A.*2d 392 (1990).

## II

■■ Well-established principles of statutory construction direct us to look first to the statute's plain language to derive its meaning, absent any specific indication of legislative intent to the contrary. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987); *Mortimer v. Board of Review,* 99 *N.J.* 393, 398, 493 *A.*2d 1 (1985). To address the challenges to the statute, we must also consider the statute in light of governing constitutional principles of taxation and exemption.

The statute provides that:

Any building and its pertinent contents and the land whereon it is erected and which may be necessary for the fair enjoyment thereof owned by a nonprofit corporation and which has been certified to be an historic site to the Director of the Division of Taxation by the Commissioner of Conservation and Economic Development as hereinafter provided shall be exempt from taxation. [*N.J.S.A.* 54:4–3.52.]

Its plain language thus indicates only two requirements for tax exemption: (1) ownership by a nonprofit corporation; and (2) certification of the property as a historic site. Nothing in the statute requires that the property be used in any way with

respect to its historical purpose apart from action necessary to maintain historic-site status.

Nor do any of the related statutes regarding historic sites impose a use requirement. *N.J.S.A.* 54:4-3.53 requires that the Commissioner of DEP, after consultation with specified authorities, certify a building as a historic site whenever "such building ... [has] material relevancy to the history of the State and its government warranting its preservation as an historical site." The statute further directs that if a restoration proceeds, the building must be "substantially the same kind, character and description as the original." *Ibid. N.J.S.A.* 54:4-3.54 provides that if substantial change occurs in a building or premises, the Commissioner may cancel its certification.

No formal legislative history addresses the absence of a use requirement in the statute. However, a legislative memorandum from the acting director of the Division of Taxation to the Deputy State Treasurer contrasted the absence of a use requirement as a prerequisite for exemption with the presence of such an obligation in another statute, *N.J.S.A.* 54:4-3.6 (tax exemption for properties "actually" and/or "exclusively" used for specified purposes). That indicates that the Legislature made a conscious choice in creating the statute without a use requirement. Moreover, in considering legislative intent, we note the many other exemption statutes that contain use requirements. *See, e.g., N.J.S.A.* 54:4-3.3, -3.5, -3.6, -3.10, -3.15, -3.24, -3.26, -3.27, all of which were enacted prior to *N.J.S.A.* 54:4-3.52. The express adoption of use requirements in those statutes strengthens our conclusion that the Legislature would have provided a requirement for "use" had it intended to do so. It did not.

### III

We must therefore address the constitutional challenges in light of the statute's plain language and clear import. To perform that task, we first turn to the guiding principles of

taxation as embodied in the constitution, requiring that taxation of all real property be imposed only by uniform rules and exemption be accomplished only by general laws. The pertinent language provides as follows:

1. (a) Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such property shall be taxed at the general tax rate of the taxing district in which the property is situated for the use of such taxing district.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

2. Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit. [*N.J.Const.* art. VIII, § 1.]

We last construed the interaction of those provisions in *New Jersey State League of Municipalities v. Kimmelman,* 105 *N.J.* 422, 522 *A.*2d 430 (1987). In that case, the plaintiffs challenged a statute that delayed taxation of unoccupied, newly-constructed single-family dwellings. We declared the statute invalid, holding that the constitutional requirement of uniformity would not tolerate such tax exemptions based on the status of the owner and enacted for the special aid of a single industry. *Id.* at 423–24, 522 *A.*2d 430.

In reaching that conclusion we reviewed the historical development that led to the enactment of the uniformity and exemption clauses in the current constitution. Developments before and during the 1947 Convention involving the Legislature's preferential treatment of the railroad industry informed the debate about real property in taxation. As a result of its dominant position in the 1800s, the railroad industry obtained a virtual exemption from taxation. In 1875, a tax clause imposed the first limited restraint on that industry:

> Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. [Const. of 1844 (as amended) art. IV, sec. 7, para. 12.]

This clause remained in effect until the enactment of the 1947 constitution.

Under the amended 1844 constitution, taxation was "valid so long as there was compliance with the classification rule that all reasonably within the class are included, that uniformity prevail throughout the whole class, and that the property be taxed at true value." *New Jersey State League of Municipalities v. Kimmelman, supra,* 105 *N.J.* at 429, 522 *A.*2d 430. However, of particular relevance to this case, we also concluded that "it was regularly held that 'classification must be of *property,* according to its *characteristics,* or the *use* to which it is put, and not according to the status of the owner, or the mere incidence of location of the property.'" *Ibid.* (quoting 2 *Proceedings of the State of New Jersey Constitutional Convention of 1947* 1685, 1687 (S. Goldman and H. Crystal ed. 1951)). Hence, under the prior constitution the Legislature could exempt property from taxation by certain types of classifications. *Tippett v. McGrath,* 70 *N.J.L.* 110, 112–13, 56 *A.* 134 (Sup.Ct. 1903), *aff'd,* 71 *N.J.L.* 338, 59 *A.* 1118 (E. & A.1904).

In *City of Jersey City v. Kelly,* 134 *N.J.L.* 239, 47 *A.*2d 354 (E. & A.1946), *modifying City of Jersey City v. State Bd. of Tax Appeals,* 133 *N.J.L.* 202, 43 *A.*2d 799 (Sup.Ct.1945), the Court allowed the real-property tax for railroad property to be fixed at only 3% per $100 of value, a figure substantially below the average tax rate for the State. That continued preferential treatment of the railroad industry enraged the public and finally led to the enactment in the 1947 constitution of article VIII, section 1, paragraphs 1 and 2. We have explained the reconciliation of the restraint on the power of the Legislature in paragraph 1 with the exemption power granted in paragraph 2, as follows:

> In the process of the constitutional debate the exemption power wa.. separated out from the uniformity clause and the current exemption language was put in the separate paragraph 2. We think that reconciliation can be achieved by

recognition that when the delegates dealt with the exemption power, they considered it as being exercised in the historical mold of the public purpose—then seen primarily as educational, charitable, and religious purposes. The proceedings of the Convention corroborate that such was the general intention of the delegates. [*New Jersey State League of Municipalities v. Kimmelman, supra,* 105 *N.J.* at 435, 522 *A.2d* 430.]

In assessing the constitutionality of *N.J.S.A.* 54:4–3.52, we consider whether the exemption is based on a permissible classification and if so, whether the classification serves a public purpose. We answer both questions in the affirmative.

A historic site tax exemption designation differs from other types of tax exemption because it relates directly to the physical status of the building—the historic nature of the building itself serves a public purpose. As the New Jersey Historical Society recognized when it supported the statute prior to enactment, there "is no better method than taking [children] to see with their own eyes where great men lived, and how they lived so that they may feel a part of and learn from the past and so be inspired by the ideals of those who made this state and the nation."

Since our decision based on a similar provision in the 1844 constitution, article IV, section 7, paragraph 12, this Court has consistently held that classifications involving the character or use of property are constitutional and that those based exclusively on the owner's status are not:

To substitute for property in [taxation or exemption] classifications the persons who own property, and then to base the proposed exemption upon the *status* or vocation or avocation of such persons, is without any constitutional warrant. Exemptions from taxation, therefore, of property, real or personal, that are based not upon any characteristic possessed by such property, or upon the uses to which it is put, but upon the personal *status* of the owners of such property, are void. [*Tippett v. McGrath, supra,* 70 *N.J.L.* at 113, 56 *A.* 134.]

The historic site exemption is " 'based upon features that inhere[ ] in the property itself ....' " *New Jersey Turnpike Auth. v. Township of Washington,* 16 *N.J.* 38, 45, 106 *A.2d* 4 (1954) (quoting *Tippett v. McGrath, supra,* 70 *N.J.L.* at 113, 56 *A.* 134.) In *League of Municipalities,* we further noted the distinction between exemptions linked to property improve-

ments for a public purpose, such as fallout shelters, pollution control devices, automatic fire systems and solar heating devices and those authorized specifically to aid a depressed industry. We commented that the public-oriented improvements "plainly appear to advance purposes generally beneficial to society as a whole unrelated to a particular industry or the status of the taxpayer," and accord with the traditional rationale for exemptions. 105 *N.J.* at 438–39, 522 *A.*2d 430.

We also look to interpretive principles derived from a long line of cases and affirmed in *General Electric Co. v. City of Passaic*, 28 *N.J.* 499, 508, 147 *A.*2d 233 (1958), *appeal dismissed*, 359 *U.S.* 1006, 79 *S.Ct.* 1146, 3 *L.Ed.*2d 987 (1959). *General Electric Co.* involved an early review of the Legislature's power to grant exemptions from taxation. The Court reviewed a statutory exemption from taxation for property stored in a commercially-owned and -operated warehouse. The Court stressed that the exemption must be narrowly applied because it represented "a departure from the fundamental principle that all property shall bear its just and equal share of the public burden of taxation." *Id.* at 511, 147 *A.*2d 233. Still, the Court recognized the position we endorse here that

> the Legislature had power to classify objects of legislation; that this power included classifications for the purpose of taxation and exemption from taxation; and that the Legislature could exercise its discretion to classify so long as the classification rested upon "substantial distinction," had "a logical and reasonable basis," and included all property while omitting none "falling within the named classification." [*Id.* at 508, 147 *A.*2d 233 (citation omitted).]

## IV

That the historic site exemption benefits society at large and not merely a certain industry or taxpayer is undisputed. The original purpose of *N.J.S.A.* 54:4–3.52 was to preserve and maintain historic sites. In its letter of June 10, 1962, to Governor Hughes urging him to support the bill, the New Jersey Historical Society recognized the importance of children being able to view historic sites.

... New Jersey has one of the most interesting histories of any of the original thirteen states, and it would be a terrible set back to those who are vitally concerned with her present and future, especially when we are about to celebrate her past with the Tercentenary, if this bill is not signed.

The Historical Society also noted that many historical sites had been destroyed and that the statute would encourage people to undertake the preservation of such historic sites.

Other supporters of the bill also recognized that the legislation would relieve the state and cities of the burden of acquiring historic buildings that fall into ruin. The New Jersey Federation of Official Planning Boards, in its letter to Governor Hughes supporting the bill, stated that "[i]t would be expensive for state or municipalities to purchase many of the sites that are owned by historical societies."

Nor is New Jersey alone in recognizing the importance of preserving historic landmarks. Throughout the country there is a burgeoning awareness of our heritage and culture as treasured national assets. Historic preservation is recognized as an important part of successful revitalization programs which create "visible impacts in many of America's cities and towns." National Trust for Historic Preservation, *Critical Issues, The Economics of Community Character and Preservation, An Annotated Bibliography* 3 (1991).

Landmark preservation has long been recognized in both federal and state adjudication and legislation. All fifty states and over five hundred municipalities have enacted legislation aimed at the preservation of buildings and areas with historic or aesthetic importance. *See Penn Central Transp. Co. v. City of New York*, 438 *U.S.* 104, 107, 98 *S.Ct.* 2646, 2650, 57 *L.Ed.*2d 631, 638 (1978). In 1966, Congress declared that " 'the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people.' " *Id.* at 107 n. 1, 98 *S.Ct.* at 2651 n. 1, 57 *L.Ed.*2d at 638 n. 1 (quoting National Historic Preservation Act of 1966, 80 Stat. 915, 16 *U.S.C.* § 470(b) (1976)) [16 *U.S.C.S.* § 478(b) ]. In

upholding a redevelopment plan for blighted areas in the District of Columbia nearly half a century ago, the Supreme Court recognized that preservation or improvement of the exterior of buildings represents a use integral to the public welfare. *Berman v. Parker*, 348 *U.S.* 26, 33, 75 *S.Ct.* 98, 102, 99 *L.Ed.* 27, 38 (1954).

> The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. *It is within the power of the legislature to determine that the community should be beautiful* as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way. [*Ibid.* (emphasis added) (citation omitted).]

In the context of zoning, this Court has found that "[c]onsideration of aesthetics in municipal land use and planning is no longer a matter of luxury or indulgence." *State v. Miller*, 83 *N.J.* 402, 409, 416 *A.*2d 821 (1980). While holding that a zoning ordinance may accommodate aesthetic concerns, we acknowledged that "[t]he development and preservation of natural resources and clean, salubrious neighborhoods contribute to psychological and emotional stability and well-being as well as stimulate a sense of civic pride." *Ibid.* (footnote omitted).

Although zoning ordinances and tax exemption statutes each implicate different concerns, both involve similar limitations on private-property use. As the Chancery Division recognized in *Hoboken Env't Comm., Inc. v. German Seaman's Mission*, 161 *N.J.Super.* 256, 391 *A.*2d 577 (1978), "the designation and protection of historical sites in a particular municipality ... can have an effect upon the community welfare and the state and municipal plans for historic preservation." *Id.* at 264–65, 391 *A.*2d 577 (citation omitted). *Cf. Manhattan Club v. Landmarks Preservation Comm'n*, 51 *Misc.*2d 556, 559, 273 *N.Y. S.*2d 848, 852 (Sup.Ct.1966) (discussing city landmark designation law that promoted general welfare and did not restrict owner's use of building interior).

Although *N.J.S.A.* 54:4–3.52 benefits the public, Morristown nevertheless contends, in light of the prohibition against status-based exemptions, that the statute unlawfully accords an exemption to nonprofit owners of certified historic sites because all other owners of similarly certified sites do not qualify for such treatment. We find, however, that the distinction drawn by the Legislature between nonprofit organizations and other owners bears a rational relationship to the Legislature's goal of preserving historic sites.

Historic sites often include old buildings that need substantial and consistent expenditures to keep them well-maintained and preserved. As the supporters of *N.J.S.A.* 54:4–3.52 recognized, many of the state's historic sites have been destroyed, razed, or substantially altered. Without some type of subsidy, a nonprofit corporation cannot afford to preserve such a site. Other states and municipalities have also recognized the problem:

> State and local tax laws may be used to provide inducements for preserving existing structures as a form of indirect public subsidy. Historic commissions and property under their control are usually declared tax exempt. Presently federal and state income tax laws encourage landowners to donate property to charitable or educational organizations and historic preservation societies by allowing deductions for the value of the property donated. Logical extensions of this policy, encouraging landmark owners to maintain their properties as landmarks rather than to demolish or alter them, is [sic] reflected in several recent acts of legislation. [Wilson and Winkler, *The Response of State Legislation to Historic Preservation*, 36 *Law & Contemporary Problems* 329, 341 (1971).]

*See generally id.* at 341–45 (discussing preservation-exemption laws in Connecticut, Illinois, New Mexico, North Carolina, Oregon, and Virginia).

The Legislature has chosen the vehicle of tax exemption to provide nonprofit corporations with the means to preserve their historic sites. A distinction between a for-profit organization, whose primary activities can generate income to preserve its property, and a nonprofit organization that needs the rental income derived from sources not tied directly to its organizational purpose to preserve its property, is rational and reasonable. So long as they are based on "distinctions of degree having a rational basis," *Carmichael v. Southern Coal and*

*Coke Co.*, 301 *U.S.* 495, 509, 57 *S.Ct.* 868, 872, 81 *L.Ed.* 1245 (1937), tax exemptions created by the Legislature "must be presumed to rest on [a rational] basis if there is any conceivable state of facts which would support [them]." *Ibid.* *See also Madden v. Kentucky*, 309 *U.S.* 83, 87–88, 60 *S.Ct.* 406, 407–408, 84 *L.Ed.* 590, 593 (1940) (legislatures have broad discretion as to classification for taxation purposes); *Taxpayers Ass'n of Weymouth Township v. Weymouth Township*, 71 *N.J.* 249, 283, *republished as corrected*, 80 *N.J.* 6, 364 *A.*2d 1016 (1976), *cert. denied sub. nom. Feldman v. Weymouth Township*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977) (under equal protection analysis, classification must be sustained if justifiable "on any reasonably conceivable state of facts.")

The Appellate Division recognized in *Township of Princeton v. Bardin*, 147 *N.J.Super.* 557, 564, 371 *A.*2d 776 (App.Div.), *certif. denied*, 74 *N.J.* 281, 377 *A.*2d 685 (1977), which we cited approvingly in *New Jersey State League of Municipalities v. Kimmelman, supra*, 105 *N.J.* at 438, 522 *A.*2d 430, that limitation of a tax exemption to nonprofit corporations may be reasonable. *Bardin* dealt with a "Green Acre" property-tax exemption under *N.J.S.A.* 54:4–3.63 to –3.71. The court found that "[t]he limitation of the ... classification was intended by the Legislature to insure that the tax exemption is not granted to individuals and corporations who would use the exemption for strictly private purposes and economic gain or who engage in activities not permitted by the federal statute." 147 *N.J.Super.* at 564, 371 *A.*2d 776. It identified a "substantial distinction" between organizations limited by their charters to operate in a nonprofit manner with authority to engage in conservation activities contemplated by the Green Acres Act, and those that are not so limited. Similarly, we find that the limitations on use of revenues by nonprofit corporations also provide a rational basis for the distinction between nonprofit owners and others under *N.J.S.A.* 54:4–3.52.

The court in *Bardin* acknowledged that "the 'owner' limitation 'separates some [property] from other [property] upon

which, but for such limitation, [the act] would operate.' " *Id.* at 565, 371 *A.*2d 776 (citation omitted). It rejected the argument that the classification was unconstitutionally arbitrary, however, reasoning that the "owner and use" dimension involved in maintaining open spaces "for public recreation and conservation or recreational purposes," *N.J.S.A.* 54:4–3.63, satisfied the reasonableness standard required by *General Electric Co. v. City of Passaic, supra,* 28 *N.J.* at 508, 147 *A.*2d 233. *Township of Princeton v. Bardin, supra,* 147 *N.J.Super.* at 564–65, 371 *A.*2d 776.

In *N.J.S.A.* 54:4–3.52, the nonprofit status of the owner is not the sole basis for the distinction between exempt and non-exempt properties. As in *Bardin,* such ownership is combined with the public purpose of preserving historic sites and with the physical characteristics of the building as a historic site.

## V

We conclude that the classification based on the characteristics of the property and the status of the owner is necessary to fulfill the public purpose of preserving historic sites. The distinction between a for-profit corporation and a nonprofit organization that needs rental income to preserve its property is rational and reasonable. The exemption statute exists exclusively to secure the preservation and maintenance of historic sites. Its sole beneficiary is the public, the citizens of New Jersey, who receive the benefits of viewing the architectural beauty of the historic buildings and better understanding our heritage.

We therefore affirm the Appellate Division and uphold an exemption under *N.J.S.A.* 54:4–3.52 for the Dr. Condit House.

CLIFFORD, J., dissenting.

Like the majority, I appreciate full well the obvious public benefit derived from historic preservation. And like the majority, I accept the proposition that " '[s]tate and local tax laws

may be used to provide inducements for preserving [historic] structures as a form of indirect public subsidy.' " *Ante* at 618, 592 *A*.2d at 223 (quoting Wilson & Winkler, *The Response of State Legislation to Historic Preservation*, 36 *Law & Contemp.Probs.* 329, 341 (1971)). Nevertheless, our constitution provides that "[e]xemption from taxation may be granted only by general laws." *N.J.Const.* art. VIII, § 1, para. 2. Thus, when exemption from taxation is the inducement for achieving the laudable goal of promoting historic preservation, that exemption must be provided through general laws. Because I believe the majority improvidently rewrites that requirement to preserve a flawed statute, I dissent.

## I

Incorrect analysis generally produces an incorrect result. The Court's approach here demonstrates that truism. Its two-step analysis, see *ante* at 614, 592 *A*.2d at 221, for determining the constitutionality of *N.J.S.A.* 54:4-3.52 is just wrong. The correct approach requires three steps: we examine (1) the purpose of the enactment and the subject matter with which it is concerned; (2) whether the statute excludes from its operation properties similarly situated to those embraced by the act; and, if so, (3) whether the limitation of the classification rests on any rational or reasonable basis relevant to the identified purpose of the act. *See Newark Superior Officers Ass'n v. City of Newark*, 98 *N.J.* 212, 223, 486 *A*.2d 305 (1985); *Vreeland v. Byrne*, 72 *N.J.* 292, 300–01, 370 *A*.2d 825 (1977).

I agree with the majority's implicit conclusion in respect of the first step: the purpose of *N.J.S.A.* 54:4-3.52 is to promote the preservation of historic sites and, thereby, New Jersey's heritage. See *ante* at 618, 620, 592 *A*.2d at 223, 224. Turning to the second and third steps, I am mindful of the basic rule that classifications of real property, in order to comply with the "general laws" requirement, must be based on "features that inhere[ ] in the property itself, or in the purpose to

which it or its usufruct [is] devoted." *Tippett v. McGrath*, 70 *N.J.L.* 110, 113, 56 *A.* 134 (Sup.Ct.1903), *aff'd*, 71 *N.J.L.* 338, 59 *A.* 1118 (E. & A.1904); *accord New Jersey Turnpike Auth. v. Township of Washington*, 16 *N.J.* 38, 45, 106 *A.*2d 4 (1954) (affirming principle under current constitution). The statute at issue is clear: it exempts a property from taxation if that property is (1) "certified to be an historic site" and (2) "owned by a nonprofit corporation." *N.J.S.A.* 54:4–3.52.

The first criterion, the certified-historic-site requirement, is obviously based on a feature of the property, does not exclude similarly situated property, and rests on a rational basis relevant to the statute's purpose, namely, to promote preservation of New Jersey's heritage.

The nonprofit-ownership requirement, on the other hand, is plainly not based on any feature of the property. Moreover, it excludes members of the natural class composed of certified historic sites, and, as is evidenced by this case, is not necessarily grounded in the purpose to which the underlying property is devoted. Town of Morristown contends that the nonprofit-ownership limitation is arbitrary in the absence of a requirement that the exempt property be devoted to use for historic purposes. It argues that without a "use" requirement, the classification fails to advance the purposes of the statute and grants an exemption to a class arbitrarily limited on the sole basis of the status of the owner. The Town is exactly right. The statute violates the general-laws mandate of our constitution and fails to come within the narrow protection accorded exemptions from taxation of property "used exclusively for religious, educational, charitable or cemetery purposes." *N.J.Const.* art. VIII, § 1, para. 2.

The concept of special, as opposed to general, legislation has been well established in this state for almost a century:

> A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not,

therefore, what a law includes that makes it special, but what it excludes. * * * Within this distinction between a special and a general law the question in every case is whether any appropriate object is excluded to which the law, but for its limitation, would apply. [*Budd v. Hancock*, 66 *N.J.L.* 133, 135–36, 48 *A.* 1023 (Sup.Ct.1901).]

The statute excludes those certified historic sites that are not owned by nonprofit organizations. Not only does that exclusion not advance the statute's intended purpose of promoting historic preservation, it hampers it.

As a result of that exclusion, *N.J.S.A.* 54:4–3.52 limits the entitlement to a tax exemption on property to a class determined by the status of the owner. As the majority recognizes, *ante* at 612–613, 592 *A.*2d 220, this Court, in *New Jersey State League of Municipalities v. Kimmelman*, 105 *N.J.* 422, 522 *A.*2d 430 (1987) (*League of Municipalities*), reaffirmed that for purposes of taxation and exemption of real property, " 'classification must be of *property*, according to its *characteristics*, or the *use* to which it is put, and not according to the status of the owner.' " *Id.* at 429, 522 *A.*2d 430 (quoting 2 *Proceedings of the State of New Jersey Constitutional Convention of 1947* 1687) (S. Goldman & H. Crystal ed. 1951); *accord Tippett v. McGrath, supra,* 70 *N.J.L.* at 113, 56 *A.* 134 ("it is *property* with respect to which taxing laws must be general"). The limitation of the scope of the exemption statute to nonprofit corporations violates that long-established rule and, in so doing, violates the unambiguous command of our constitution that "[e]xemption from taxation may be granted only by general laws." *N.J.Const.* art. VIII, § 1, para. 2.

## II

The majority seeks to diverge from firmly established special-legislation analysis on the basis of cases that not only do not compel the radical departure taken, they do not even support it. Citing *League of Municipalities*, the majority states that

we further noted the distinction between exemptions linked to property improvements for a public purpose, such as fallout shelters, pollution control devices, automatic fire systems, and solar heating devices and those authorized

specifically to aid a depressed industry. We commented that the public-oriented improvements "plainly appear to advance purposes generally beneficial to society as a whole unrelated to a particular industry or the status of the taxpayer," and accord with the traditional rationale for exemptions. [*Ante* at 615, 592 *A*.2d at 221 (quoting *League of Municipalities, supra,* 105 *N.J.* at 438–39, 522 *A*.2d 430).]

The issue now before us, however, was not confronted in *League of Municipalities,* in which this Court expressly stated that "[w]e therefore do not address the question * * * of whether the act was invalid as special legislation and thus not an exemption granted by general laws." 105 *N.J.* at 424, 522 *A*.2d 430. The language in *League of Municipalities,* then, recognizing the validity of other exemptions, is not controlling. Moreover, those other exemptions are valid not because of their generally beneficial purposes but rather, as noted (but then overlooked) by the majority, because entitlement to them is "linked to property improvements," *ante* at 614, 592 *A*.2d at 221, or characteristics of the property. *See League of Municipalities, supra,* 105 *N.J.* at 429, 522 *A*.2d 430. Classification is not further limited according to the status of the property owner.

The conclusion for which the majority cites *League of Municipalities* finds no support in that opinion. Quite the opposite. In *League of Municipalities* the Court observed that "repeated amendments to the [c]onstitution have been *required* to grant exemption from taxation for real property." *Id.* at 438, 522 *A*.2d 430 (emphasis added). Amendments were required because the exemptions were "accorded by status, not use," and the Court characterized that necessity of constitutional provision as "expressive of the limited power of exemption." *Ibid.* As noted *supra* at 609, 592 *A*.2d at 218, rather than recognize a generally-beneficial-public-purpose exception to the constitution's general-laws requirement, the Court implicitly reaffirmed the rule that classification of real property must be based on the property's inherent characteristics or use and not on the status of its owner. *Id.* at 429, 522 *A*.2d 430.

The majority also relies on *General Electric Co. v. City of Passaic,* 28 *N.J.* 499, 147 *A.*2d 233 (1958), *appeal dismissed,* 359 *U.S.* 1006, 79 *S.Ct.* 1146, 3 *L.Ed.*2d 987 (1959), for the proposition that there is a generally-beneficial-purpose exception for classification for exemption from real-property taxation. See *ante* at 614–616, 592 *A.*2d at 221–222. As pointed out in *League of Municipalities,* however, the *General Electric Co.* Court "explained that the exemption from business property taxes of *personal* property in warehouses could continue to be valid. Obviously, *real* property was not included within the contemplation of [its] decision." 105 *N.J.* at 437–38, 522 *A.*2d 430 (emphasis added). Unlike the present case, moreover, entitlement to that exemption "[does] not rest on the personal status of the owner as in *Tippett.*" *General Elec. Co., supra,* 28 *N.J.* at 509, 147 *A.*2d 233. That exemption statute is valid because it "applies to all personal property stored in a warehouse and * * * includes all property within the state so situated, omitting none." *Schwartz v. Essex County Bd. of Taxation,* 129 *N.J.L.* 129, 28 *A.*2d 482 (Sup.Ct.1942), *aff'd,* 130 *N.J.L.* 177, 32 *A.*2d 354 (E. & A.1943); *see General Elec. Co., supra,* 28 *N.J.* at 510, 147 *A.*2d 233 (declining to depart from the holding in *Schwartz*).

Finally, the majority relies on *Township of Princeton v. Bardin,* 147 *N.J.Super.* 557, 371 *A.*2d 776 (App.Div.), *certif. denied,* 74 *N.J.* 281, 377 *A.*2d 685 (1977). After stating that *Bardin* was "cited approvingly" by this Court in *League of Municipalities* and that "[i]t identified a 'substantial distinction' between organizations limited by their charters to operate in a nonprofit manner * * * and those that are not so limited," *ante* at 619, 620, 592 *A.*2d at 223, 224, the majority concludes that "the classification based on the characteristics of the property and the status of the owner" is constitutionally permissible. *Id.* at 620, 592 *A.*2d at 224. That conclusion overreads the importance of *Bardin.* The foremost basis for distinction between *N.J.S.A.* 54:4–3.52 to –3.54 and the statute construed in *Bardin, N.J.S.A.* 54:4–3.63 to –3.71, is that the

latter does not merely distinguish nonprofit corporations from other property owners. The nonprofit-ownership requirement operates in conjunction with a use limitation to narrow the application of the exemption statute to only those "organizations and corporations [that] are required by their state charters, and hence by state law, to operate in a nonprofit manner and * * * are authorized by their charters to engage in and do engage in the conservation activities contemplated by the act." *Bardin, supra,* 147 *N.J.Super.* at 564, 371 *A.*2d 776.

Critical to that court's decision to uphold the statute was the recognition that it "also classified eligible property according to its actual and exclusive use for 'natural open space areas for public recreation and conservation * * * purposes.' " *Id.* at 564–65, 371 *A.*2d 776 (quoting *N.J.S.A.* 54:4–3.63). The distinction made was not merely between nonprofit corporations and other organizations. It was between properties owned by nonprofit organizations authorized by their charters to engage in the purposes for which the legislation was enacted, and devoted actually and exclusively to achieving those purposes, and those properties not so owned and devoted. See *id.* at 572–73, 371 *A.*2d 776 (invalidating enacting regulation because it "mechanically granted the exemption" to "nonprofit organizations * * * without inquiry into the purposes in which the applicant is authorized by its charter to engage, and the use to which the land is actually put"). That additional limitation on the use of the property, not present here, renders that statute constitutionally valid. *See N.J.Const.* art. VIII, § 1, para. 2 (according special protection to those statutes "exempting real and personal property *used exclusively* for religious, educational, charitable or cemetery purposes" (emphasis added) and owned by a corporation or organization not operated for profit).

The ownership distinction, although substantial in the abstract, fails here because in the context of *N.J.S.A.* 54:4–3.52 the requirement of ownership by a nonprofit organization is not rationally related to the goal of promoting historic preservation. "Legislation can be unconstitutionally special even where it

affects groups * * * if its classification of them [bears] no rational relationship to its object." *Meadowlands Regional Redev. Agency v. State*, 63 *N.J.* 35, 48, 304 *A.*2d 545 (1973) (Conford, P.J.A.D., temporarily assigned, dissenting in part). I do not agree with the majority's conclusion that "classification based on the characteristics of the property and the status of the owner is necessary to fulfill the public purpose of preserving historic sites." *Ante* at 620, 592 *A.*2d at 224. I note that although the New Jersey Historical Society supported enactment of the statute based on the importance of permitting our young people "to see with their own eyes where the great men lived, and how they lived," see Letter from New Jersey Historical Society to Governor Richard Hughes (June 10, 1962), Woman's Club of Morristown does not permit, and has never permitted, public access to see how "the great men lived." The subject property, the long-time home of a prominent early Assembly speaker, Congressman, industrialist, and trustee of the College of New Jersey (now Princeton University), is private and is used primarily for commercial endeavors. For the purposes of achieving the recognized goal of *N.J.S.A.* 54:4–3.52, it is no different from a certified historic site owned by an entity that is not a nonprofit organization. Yet property owned by such an entity is arbitrarily excluded from receiving an exemption, not because the property is not dedicated to the activity that the statute seeks to promote but solely because of the status of its owner. Such an exclusion violates the general-laws requirement and renders *N.J.S.A.* 54:4–3.52 constitutionally infirm.

I would reverse.

Justice Handler joins in this dissenting opinion.

*For affirmance* —Chief Justice WILENTZ, and Justices GARIBALDI, O'HERN, and STEIN—4.

*For reversal* —Justices CLIFFORD and HANDLER—2.