909 A.2d 1131 (2006)
388 N.J. Super. 550
CHICAGO TITLE INSURANCE COMPANY, Commonwealth Land Title Insurance Company, Commonwealth Land Title of New Jersey, Conestoga Title Insurance Company, Fidelity National Title Insurance Company of New York, First American Title Insurance Company, Lawyers Title Insurance Corporation, New Jersey Title Insurance Company, Old Republic National Title Insurance Company, Security Union Title Insurance Company, T.A. Title Company, The Security Title Guarantee Corporation of Baltimore, Ticor Title Insurance Company, Transnation Title Insurance Company, United General Title Insurance Company, New Jersey Land Title Association, Plaintiffs-Appellants,
v.
Donald BRYAN, Commissioner of the Department of Banking and Insurance in the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 2006.
Decided November 13, 2006.
*1132 Edward C. Eastman, Jr. argued the cause for appellants (LoMurro, Davison, Eastman & Munoz, attorneys; Mr. Eastman, of counsel; Michael J. Fasano, Freehold, on the brief).
Eleanor Heck, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Acting Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Heck, on the brief).
Before Judges LISA, HOLSTON, JR., and GRALL.
The opinion of the court was delivered by
LISA, J.A.D.
These consolidated appeals question whether title insurance companies are subject to assessments authorized by the Insurance Fraud Protection Act (IFPA), N.J.S.A. 17:33A-1 to -30, or are exempt by provisions of the Title Insurance Act of 1974(TIA), N.J.S.A. 17:46B-1 to -62. We hold that title insurers are subject to the assessments, and we therefore affirm the action of the Commissioner of Banking and Insurance (Commissioner) imposing them.
The IFPA was enacted in 1983. L. 1983, c. 320. Its purpose is "to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims." N.J.S.A. 17:33A-2.
*1133 The IFPA established within the Department of Insurance[1] the Division of Insurance Fraud Prevention, N.J.S.A. 17:33A-8a, and provided that its expenses would be funded by an annual assessment imposed by the Commissioner, apportioned "among all of the companies writing the class or classes of insurance described in Subtitle 3 of Title 17 of the Revised Statutes ([N.J.S.A.] 17:17-1 et seq.), and Subtitle 3 of Title 17B of the New Jersey Statutes ([N.J.S.A.] 17B:17-1 et seq.), within this State. . . ." N.J.S.A. 17:33A-8g. Amendments in 1998 created within the Division of Criminal Justice in the Department of Law and Public Safety the Office of Insurance Fraud Prosecutor, N.J.S.A. 17:33A-16, the expenses of which are also assessed against the same insurance companies. N.J.S.A. 17:33A-30. Each insurance company's proportionate share is based on the net premiums it received the previous year compared to the sum total of all net premiums received by all included insurance companies that year.[2]N.J.S.A. 17:33A-8g.
Subtitle 3 of Title 17 encompasses many kinds of insurance, specifically including title insurance. N.J.S.A. 17:17-1h. Indeed, the TIA, which predated the IFPA by nine years, is part of this subtitle. Subtitle 3 of Title 17B pertains to life and health insurance companies. Thus, the IFPA, standing alone, by its plain terms authorizes assessments against title insurance companies. Since enactment of the IFPA in 1983, the annual assessments issued by the Commissioner have been imposed on title insurance companies, which paid them uneventfully for the next twenty years.
Then, on November 24, 2003, the Executive Director of appellant, New Jersey Land Title Association (Association), a non-profit corporation made up of and representing the interests of title insurance companies in New Jersey, wrote to the Commissioner, the Attorney General and the Office of Insurance Fraud Prosecutor, expressing the view that provisions of the TIA exempted title insurance companies from the assessment provision contained in N.J.S.A. 17:33A-8g. The Commissioner declined to alter the policy of including title insurers in the assessment allocation. The fiscal year 2003 assessments issued on January 9, 2004, payable by February 5, 2004, included title insurance companies. They paid them.
On August 10, 2004, a complaint was filed in the Law Division on behalf of the Association and fifteen title insurance companies transacting business in New Jersey against the Commissioner, seeking a declaration that title insurers are not subject to the assessments, an injunction prohibiting future assessments, and refunds of all assessments previously paid. On December 3, 2004, the Law Division judge transferred the case to this court pursuant to Rule 1:13-4(a). For fiscal years 2004 and 2005, the title insurers paid the assessments "under protest" and in each year promptly filed new appeals. All of the appeals have been consolidated and are disposed of in this opinion.[3]
*1134 Appellants argue that notwithstanding the apparent applicability to title insurers of the IFPA assessments by virtue of N.J.S.A. 17:33A-8g, the Legislature did not intend such applicability. Appellants rely primarily on the TIA's legislative history and several of its provisions to support their argument.
Prior to enactment of the TIA, title insurance companies were unregulated in New Jersey. In 1972, the Legislature created the Real Estate Title Insurance Study Commission (Commission) to study the need for regulation of title insurance and to make recommendations for such regulation. See Assembly Concurrent Resolution No. 77 (Apr. 10, 1972). The Commission noted significant differences between title insurers and other insurers. Most notably, title insurers eliminate risk before issuing a policy, as opposed to casualty insurers, which assume risk for events that may occur after the policy is issued. Title insurers protect their insureds primarily from errors or omissions of the insurer itself. Further, title insurance is purchased by one premium and does not insure against loss for only a limited term. And, title insurance is tied to the system of real estate conveyancing, with each policy pertaining to a specific parcel, based upon an examination of real estate records and applicable laws. See N.J. Real Estate Title Insurance Study Commission, A Report to the Legislature, at 9-12 (Mar.1974). Because of these fundamental differences, title insurers expend a much greater portion of their operating expenses on overhead than casualty insurers. The converse is true regarding claims payouts, which are much lower than casualty insurers.
The Commission noted that in other states "[t]he usual legislative scheme exempts title insurance from the strictures of the general insurance code and covers the business in a less comprehensive chapter." Id. at 13. The Commission recommended a separate act to regulate title insurers. Id. at 16-17. The Legislature accepted the Commission's recommendations and enacted the TIA as a separate subtitle of New Jersey's insurance code, Title 17, Subtitle 46B. And, the TIA contains provisions limiting the applicability to title insurers of many provisions of the State's insurance laws.
Appellants rely in particular on three sections of the TIA. The first is N.J.S.A. 17:46B-60, entitled "Other sections applicable." Its narrative portion reads as follows:
In addition to the provisions of this act, only the following provisions of the laws governing insurance companies and insurance agents as presently enacted and hereinafter amended, except as they are inconsistent with the provisions of this act, shall apply to the business of title insurance to title insurance companies, which shall be considered as within the class of insurance companies regulated by such provisions solely for the limited purpose of being subject to such provisions:
[N.J.S.A. 17:46B-60.]
Following this narrative is an enumeration of specified sections and chapters within Title 17. Of course, when the TIA was enacted in 1974, the IFPA did not yet exist and was not listed. Appellants argue that in order for the IFPA to be applicable to title insurers, it was necessary for the Legislature to amend N.J.S.A. 17:46B-60 to include it after the IFPA's enactment. Appellants find further support for this argument by pointing out that N.J.S.A. 17:46B-60 was amended in 1993, ten years after enactment of the IFPA, to add eight new chapters or amendments to existing chapters in Title 17 that were enacted that year. L. 1993, c. 241 § 11. According to appellants, the Legislature's failure to include *1135 the IFPA in the amendment to N.J.S.A. 17:46B-60 was an intentional omission, evincing its intent that the IFPA not apply to title insurers.
Appellants further rely on the TIA's repealer section, which provides:
All laws and parts of laws in conflict with the provisions of this act are hereby repealed insofar as they may be or have been applicable to the business of title insurance, title insurance companies, title insurance agents, or title insurance rating organizations; and, in case conflict should develop, the provisions of this act shall control and be effective.
[N.J.S.A. 17:46B-61.]
Finally, appellants rely on the TIA's "Effect of this act" provision, which provides in relevant part:
No provision of the insurance laws of this State, except as contained or referred to in this act, shall be applicable to title insurance companies, title insurance agents, title insurance rating organizations or the business of title insurance, and no law hereafter enacted shall apply to title insurance companies, title insurance agents, title insurance rating organizations or the business of title insurance unless specified to be or become so applicable.
[N.J.S.A. 17:46B-62.]
These provisions in the TIA, in combination with the history leading up to its adoption, according to appellants, make abundantly clear the Legislature's intent to treat title insurers differently than other insurers. Thus, they argue, despite the apparent all-inclusiveness of the IFPA, it does not apply to title insurers, because: (1) it was not added to the list of general insurance laws applicable to title insurers in N.J.S.A. 17:46B-60; (2) it conflicts with and is therefore overridden by the TIA pursuant to N.J.S.A. 17:46B-61; and (3) it was not "specified" in the IFPA to be applicable to title insurers, as required by N.J.S.A. 17:46B-62.
Appellants bolster their argument with two additional points. The legislative history and provisions of the IFPA demonstrate that it was aimed primarily at fraud in relation to automobile and health insurance, and contains no specific mention of title insurance. Further, appellants rely on the well-established canon of statutory construction that "[w]here there is a seeming conflict between a general statute and a specific statute covering a subject in a more minute and definite way, the latter shall prevail over the former and will be an exception to the general statute." Goff v. Hunt, 6 N.J. 600, 607, 80 A.2d 104 (1951); see also New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995). Appellants contend the three provisions in the TIA that we have discussed are patently more specific than the general reference in the IFPA stating which insurance companies are included.
These arguments are facially meritorious and well articulated by appellants. In our view, however, the arguments are more narrow and formalistic than resolution of the issue before us reasonably allows. In light of the broad purpose of the IFPA, we believe a broader perspective in reconciling the apparently conflicting statutes is required.
The construction of a statute begins with consideration of its plain language. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). The language should be given its ordinary meaning, absent a contrary legislative intent. Town of Morristown v. Woman's Club, 124 N.J. 605, 610, 592 A.2d 216 (1991). The judicial role is to "effectuate the legislative intent in light of the language used and the objects sought to be *1136 achieved." State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980). This requires consideration of the context in which a statute appears. Waterfront Comm'n v. Mercedes-Benz, 99 N.J. 402, 414, 493 A.2d 504 (1985). This consideration is particularly pertinent when two statutes, enacted at separate times, appear to conflict.
"[W]hen legislative intents of two apparently conflicting statutes dealing with the same subject are at issue, courts are enjoined to reconcile conflicts and read the laws as consistent to give effect to both expressions of the Legislature's purpose." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 310 N.J.Super. 224, 234, 708 A.2d 708 (App.Div.1998), aff'd, 158 N.J. 211, 729 A.2d 21 (1999). "Statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'" Ibid. (citations omitted). All rules of statutory construction are "subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment `when read in full light of its history, purpose, and context.'" State v. Haliski, 140 N.J. 1, 9, 656 A.2d 1246 (1995) (quoting State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966)).
Applying these principles, we are convinced that including title insurers in the IFPA assessments gives effect to the legislative intent underlying the IFPA without disturbing the legislative intent underlying the TIA.
The purpose of the IFPA is to combat insurance fraud of all kinds. It is clear, as appellants argue, that the IFPA is aimed primarily at the areas of automobile and health insurance, where fraud has been most rampant. For example, only automobile and health insurers are required to file with the Commissioner fraud prevention plans, N.J.S.A. 17:33A-15; and the creation of the Office of Insurance Fraud Prosecutor, N.J.S.A. 17:33A-16, and the other 1998 amendments to the IFPA were part of the Automobile Insurance Cost Reduction Act (AICRA). L. 1998, c. 21.
It is equally clear, however, that all kinds of insurers are susceptible to fraud, and the investigatory, prosecutorial, record keeping, and other functions of the Insurance Fraud Prosecutor apply to all kinds of insurance, including title insurance. See, e.g., N.J.S.A. 17:33A-19 (directing Insurance Fraud Prosecutor to investigate and, if warranted, prosecute cases referred to it by "insurers"); N.J.S.A. 17:33A-7 (authorizing "[a]ny insurance company" to sue a party for damages resulting from a violation of the IFPA, and recover treble damages, attorneys fees, investigation fees and costs of suit, requiring notification to the Insurance Fraud Prosecutor of such litigation and providing all pertinent information, and authorizing the Insurance Fraud Prosecutor to join in the action to seek civil penalties provided for in the IFPA); N.J.S.A. 2C:21-4.5 (defining, relative to criminal insurance fraud sections, "insurance company" as "any . . . entity . . . legally engaged in the business of insurance").
Appellants do not dispute this. They argue, instead, that the incidence of fraudulent title insurance claims will be relatively infrequent compared to those involving automobile and health insurance. Yet, title insurers reap the benefits of the IFPA, even if their need for those benefits is less than that of some other kinds of insurers.
Commensurate with the legislative decision to include all insurers within the IFPA's protective sweep, the Legislature provided in N.J.S.A. 17:33A-8g that all insurers would share in paying for the cost of that protection. Ultimately, the cost is borne by policyholders. By setting each insurer's share in proportion to the *1137 insurer's net premiums received, the Legislature provided a formula by which the cost of the program would be shared in a manner deemed equitable by the Legislature by all policyholders of all kinds of insurance in the state. This equitable arrangement would be undermined if one group of policyholders were exempted at the increased expense of others. Such a construction would subvert rather than support the intent embodied in the IFPA's scheme.
We are unpersuaded that the somewhat unique characteristics of title insurance companies that induced the Legislature to treat them separately and generally insulate them from other provisions of the insurance code compel a different result. The separate treatment and less comprehensive regulation provided by the TIA pertain to internal operations and financial responsibility requirements. The level of regulation in those respects was set by the Legislature in recognition of the nature of the business of title insurance. But the IFPA does not pertain to internal operations or financial responsibility matters. It deals with a subject matter that is common to all kinds of insurers. Thus, a construction of N.J.S.A. 17:33A-8g that requires assessment of title insurers under the IFPA does not conflict with the TIA.
Nor are we persuaded by appellants' argument that the 1993 amendments to N.J.S.A. 17:46B-60 demonstrate an intent by the Legislature to designate those laws enacted after the TIA which it intended to apply to title insurers, while deliberately omitting from the amendments all other laws, including the IFPA, resulting in their non-applicability. Those amendments were part of a package of twelve bills adopted in response to the collapse of the Mutual Benefit Life Insurance Company. See Beth Fitzgerald, Florio Signs Stricter Scrutiny for Insurance Firms in State, Newark Star Ledger, Aug. 10, 1993. Some of the bills were added to the list of insurance laws applicable to title insurers in N.J.S.A. 17:46B-60, while others were not.
As pointed out by appellants, each of the bills contained a general definition of insurance companies to which it was applicable, similar to that in N.J.S.A. 17:33A-8g. According to appellants, the inclusion of some but not all of the bills in N.J.S.A. 17:46B-60 proves two things: (1) the general definition of insurance companies in N.J.S.A. 17:33A-8g does not have the "specificity" required by N.J.S.A. 17:46B-62 to make the after-enacted IFPA applicable to the TIA; and (2) the Legislature's failure to include the IFPA in the amendments was a conscious decision by the Legislature that the IFPA not apply to the TIA.
We reject these arguments. We begin by noting that N.J.S.A. 17:46B-60 pertains to sections of the general insurance code that pre-existed adoption of the TIA. Addition by amendment to N.J.S.A. 17:46B-60 of after-enacted laws is not necessary to render the after-enacted laws applicable to title insurers if those laws adequately specify they are applicable, as provided by N.J.S.A. 17:46B-62. Thus, amendment to N.J.S.A. 17:46B-60 is not the only means by which a law enacted after the TIA can be applicable to title companies. Our task is to determine whether the IFPA applicability provision in N.J.S.A. 17:33A-8g is sufficiently specific to embrace title insurers.
The 1993 package of bills constituted a reform effort addressing the financial stability of insurance companies. Unlike the IFPA, these laws dealt primarily with internal operations and financial responsibility matters, akin to the subject matter in the TIA. Those added to the TIA by amendment of N.J.S.A. 17:46B-60 imposed *1138 more stringent regulatory requirements and might well have been deemed to be in conflict with the TIA's less restrictive level of regulation of title insurance companies. See, e.g., L. 1993, c. 237 (N.J.S.A. 17:22C-1 to -10) (regulating managing general agents); L. 1993, c. 239 (N.J.S.A. 17:22D-1 to -6) (regulating controlling insurance producers); L. 1993, c. 244 (N.J.S.A. 17:22E-1 to -23) (regulating reinsurance intermediaries); L. 1993, c. 238 (N.J.S.A. 17:23B-1 to -5) (establishing insurance regulatory information system, requiring filing with the Commissioner of annual statements of financial condition); L. 1993, c. 245 (N.J.S.A. 17:51A-1 to -10) (providing for administrative supervision of insurers); L. 1993, c. 243 (N.J.S.A. 17:51B-1 to -4) (providing reinsurance regulation); see also L. 1993, c. 242, § 6 (added directly to the TIA as a separate new section, N.J.S.A. 17:46B-22.1, pertaining to valuation of securities, paralleling a new section added to the general insurance laws by L. 1993, c. 242, § 4, N.J.S.A. 17:24-5.1).
Further, by 1993, the Commissioner had been assessing title insurers under the IFPA for ten years, and the title insurers had been paying the assessments without question. It is fair to conclude that the Legislature was aware of this course of events, approved of it as an intended consequence of its enactment of the IFPA, and saw no need for legislative action with respect to it in 1993. See Malone v. Fender, 80 N.J. 129, 137, 402 A.2d 240 (1979) ("[A]n agency's construction of a statute over a period of years without legislative interference will under appropriate circumstances be granted great weight as evidence of conformity with the legislative intent.")
We are satisfied that the definition in N.J.S.A. 17:33A-8g is sufficient to include title insurers, not merely because of its literal terms, but in light of the broad purpose and context of the IFPA and the object the IFPA sought to achieve. We conclude that our construction appropriately harmonizes the apparently conflicting provisions of the TIA and IFPA in a manner that avoids an actual conflict and accords with the legislative intent underlying each enactment. Our construction gives full meaning and effect to both statutory schemes and does no violence to either.
The assessments under review are affirmed.
NOTES
[1] The Department of Insurance is now the Department of Banking and Insurance.
[2] The obligation of each insurance company is subject to a 5% cap, which is not applicable here.
[3] Because we determine that title insurers are subject to the IFPA assessments, we need not address the timeliness of the appeals by each party for each year, nor entitlement to refunds. We are satisfied that at least some of the appeals were timely filed, thus bringing before us the single issue raised in all of the appeals. In light of our holding there will be no refunds.